IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD CHARTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08CV75 |
| vs. ) | Judge Lefkow |
| ) | Magistrate Judge Cole |
| ABBOTT LABORATORIES, ) | |
| ) | |
| Defendant. ) | |

## ABBOTT LABORATORIES' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Abbott Laboratories ("Abbott"), by its undersigned counsel, answers the Complaint of Plaintiff Richard Charts ("Plaintiff" or "Charts") as follows:

### PRELIMINARY STATEMENT

1. This action seeks redress for the violation of rights guaranteed to Plaintiff by the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks mandatory injunctive relief, declaratory relief and damages to redress Defendant's discriminatory employment practices.

**ANSWER:** Abbott admits that Plaintiff purports to bring claims pursuant to the Age Discrimination and Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964. Abbott further admits that Plaintiff is seeking the relief described in second sentence of Paragraph 1. Abbott denies that Plaintiff's claims have any merit.

### JURISDICTIONAL STATEMENT

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 29 U.S.C. § 621 et seq. and 42 U.S.C.

       § 2000e et seq.  Plaintiff seeks declaratory relief pursuant
       to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:** Whether jurisdiction of this Court has been properly invoked is a legal conclusion to which no response is required.  To the extent that an answer is required, Abbott admits that jurisdiction is proper.  Abbott denies that it committed:  any violation of rights secured by the ADEA or Title VII, any retaliatory discharge, or any other unlawful employment practices against Plaintiff.

## VENUE

  3.  Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

**ANSWER:** Whether venue is proper is a legal conclusion to which no response is required.  To the extent that an answer is required, Abbott admits that venue is proper.

## PARTIES

  4.  Plaintiff, RICHARD CHARTS, is a fifty-eight (58) year-old male citizen of the United States who resides in Illinois.

**ANSWER:** Abbott admits that, at the time of filing this Complaint, Plaintiff was fifty-eight years of age.  Abbott further admits that Plaintiff is a male citizen of the United States.  Abbott lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4, and therefore denies them.

  5.  Defendant, ABBOTT LABORATORIES, is a corporation properly recognized and sanctioned by the laws of the State of Illinois.  At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the State of Illinois. Defendant is an employer for the purposes of 29 U.S.C. § 630(b) and 42 U.S.C. § 2000e(b) as Defendant has continuously and does now employ more than twenty (20) employees and is engaged in an industry that affects commerce.

**ANSWER:** Whether Abbott is an employer for the purposes of 29 U.S.C. § 630(b) and 42 U.S.C. § 2000e(b) is a legal conclusion to which no response is required. To the extent that an answer is required, Abbott admits that it is a corporation properly recognized and sanctioned by the laws of the State of Illinois. Abbott further admits that it has during all relevant times and does now employ more than 20 employees, presently does business in Illinois, and is engaged in an industry that affects commerce.

## PROCEDURE

6. Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on November 21, 2007. The EEOC issued Plaintiff a Notice of Right to Sue on November 28, 2007, which Plaintiff received on November 29, 2007. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff has initiated this action within said ninety (90) day period.

**ANSWER:** Abbott admits the allegations contained in the first, third, and fourth sentences of Paragraph 6. Abbott further admits that the EEOC issued Plaintiff a Notice of Right to Sue on November 28, 2007. Abbott lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6, and therefore denies them.

## COUNT I - ADEA - AGE DISCRIMINATION

7. Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

**ANSWER:** Abbott incorporates its answers to Paragraphs 1 through 6 as though fully set forth herein.

8. Plaintiff began working for Defendant in June of 1990 as a Senior Business Systems Analyst for Corporate

-3-

        Purchasing and, after receiving three (3) promotions, subsequently assumed the position of Operations Manager in Global QDMS pursuant to Defendant's "I-Grade" program.

**ANSWER:** Abbott admits the allegations contained in Paragraph 8.

    9.    Defendant's "I-Grade" program is designed to allow employees to take on necessary roles and tasks that they might not have undertaken otherwise, with the intention being that the employee will transition to a higher level position within two (2) years.

**ANSWER:** Abbott denies the allegations contained in Paragraph 9.

    10.    Throughout his seventeen and one-half (17.5) years of employment with Defendant, Plaintiff has performed to and in excess of Defendant's reasonable satisfaction at any times material hereto, as evidenced by, without limitation, Plaintiffs three (3) promotions, fifteen (15) merit-based raises, performance evaluations, and his receipt of numerous recognitions for his performance including, but not limited to, the Chairman's Award and the President's Award.

**ANSWER:** Abbott denies that Plaintiff has performed to and in excess of Defendant's reasonable satisfaction during the relevant time in question, and therefore denies the allegations contained in Paragraph 10.

    11.    During 2005, Defendant assigned Plaintiff the position of Operations Manager, a task which required Plaintiff to manage a team that operated Defendant's QDMS 2.0 global system and deployed system access to seventy (70) total locations.

**ANSWER:** Abbott admits the allegations contained in Paragraph 11.

    12.    Throughout 2005 and 2006, Plaintiff successfully managed and implemented the QDMS 2.0 global operating system by creating new operating procedures for each activity, cultivating relationships with the applicable corporate entities, and establishing a new Operations Support Committee to make tactical decisions on priorities, scheduling, and strategies.

**ANSWER:** Abbott denies the allegations contained in Paragraph 12.

13. Beginning in 2006 and continuing to the termination of his employment, Plaintiff's director, Tom Wilson, Director of Quality Systems, has treated similarly situated younger employees more favorably than Plaintiff by providing these younger employees better resources, opportunities, and holding Plaintiff to a higher standard of performance. Examples of such disparate work conditions are detailed below.

**ANSWER:** Abbott denies the allegations contained in Paragraph 13.

14. Beginning in 2006, Director of Quality Systems Wilson targeted Plaintiff in a manner not afforded to his similarly situated younger co-workers by assigning Plaintiff blame and responsibility for tasks and issues that were beyond his control.

**ANSWER:** Abbott denies the allegations contained in Paragraph 14.

15. Following a 2006 system implementation, Plaintiff began to receive in excess of two hundred (200) emails each day from various system users experiencing technical issues or difficulties, to which Plaintiff or his group was expected to respond to in addition to their regular duties.

**ANSWER:** Abbott lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15, and therefore denies them.

16. In addition, the workload for Plaintiff's operations team increased exponentially due to an increased user base, stored documents, business assistance calls, and server capacity.

**ANSWER:** Abbott admits that Plaintiff's operations team's workload increased due to increased user base, stored documents, business assistance calls, and server capacity. Abbott denies that Plaintiff's operations team's workload increased exponentially.

17. In response to the increased demands on Plaintiff and his staff, Plaintiff requested additional assistance from Director of Quality Systems Wilson. Rather than

     approve such requests, Wilson cut Plaintiff's staff by over fifteen (15) percent.

**ANSWER:**  Abbott denies the allegations contained in Paragraph 17.

    18. In contrast to Plaintiff, Plaintiffs younger similarly situated co-workers, including Mark Lola, received the employee support necessary to accomplish their assigned tasks.

**ANSWER:**  Abbott admits only that Mark Loula received the employee support necessary to accomplish his assigned tasks. Abbott denies the remaining allegations contained in Paragraph 18.

    19. Following the substantially increased workload and forced reductions in staff, Director of Quality Systems Wilson began to target and harass Plaintiff by documenting every misstep or non-immediate reply from any system user experiencing technical issues. Despite similar or more egregious issues in other departments, Director of Quality Systems Wilson did not equally scrutinize the performance of Plaintiffs similarly situated younger co-workers, including Mark Lola and Doug Rahle.

**ANSWER:**  Abbott denies the allegations contained in Paragraph 19.

    20. Director of Quality Systems Wilson has further denied Plaintiff the opportunity to travel to support sites, a vital task which allows for the maintenance and creation of operating relationships. Rather, Wilson allowed Plaintiff's similarly situated younger co-workers to travel to the sites, including Mark Lola and Doug Rahle, despite little or no need for Lola or Rahle to develop such relationships on-site.

**ANSWER:**  Abbott admits only that Mark Loula and Doug Raihle occasionally traveled as part of their job responsibilities. Abbott denies the remaining allegations contained in Paragraph 20.

    21. Director of Quality Systems Wilson has further discriminated against Plaintiff by denying him career

>    opportunities in favor of similarly situated younger co-workers or individuals.

**ANSWER:** Abbott denies the allegations contained in Paragraph 21.

>    22. In approximately the third quarter 2006, Plaintiff applied for an open position of Document Management Program Manager within the QDMS 2.0 project. Based on his substantial experience, expertise, and thirty (30) years in systems implementation, Plaintiff was highly qualified for the position. However, rather than promote Plaintiff to the position, Defendant promoted Cindy Peterson, a substantially younger individual in her forties, to the role. In contrast to Plaintiff, Peterson lacked the necessary skills and experience in the industry, causing her to struggle with the project and eventually leading to a leave of absence of her employment.

**ANSWER:** Abbott lacks knowledge or information sufficient to form a belief as to the truth of the allegation relating to if and when Plaintiff applied for an open position of Document Management Program Manager within the QDMS 2.0 project, and therefore denies the allegations contained in the first sentence of Paragraph 22. Abbott admits that Cindy Peterson was promoted into this position and that she is younger than Plaintiff. Abbott denies the remaining allegations contained in Paragraph 22.

>    23. Following Cindy Peterson's departure in August 2007, Plaintiff again applied for the position of Document Management Program Manager. Once again, rather than promote Plaintiff, an individual with substantial expertise and experience on the project, Defendant hired Patricia Pierson (approximately 30 years old), a substantially younger and less qualified individual from outside the organization.

**ANSWER:** Abbott admits that following Cindy Peterson's departure, Plaintiff applied for the position of Document Management Program Manager. Abbott further admits that Patricia Pierson was hired for this position and that she is younger than Plaintiff. Abbott denies the remaining allegations contained in Paragraph 23.

24. In addition, throughout 2006 and 2007, Plaintiff continued to apply to higher level positions as intended by Defendant's "I-Grade" program, including the positions of Technical Consultant, Systems Manager, Business Consultant, and other IT Manager positions in various departments. However, despite being substantially qualified for these positions, Defendant never allowed Plaintiff to interview for such roles. On information and belief, substantially all of the positions Plaintiff applied for went to younger candidates

**ANSWER:** Abbott denies that Plaintiff would be substantially qualified for higher level positions, given his poor performance in his reduced grade position. Abbott lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24, and therefore denies them.

25. In contrast to Plaintiff, Plaintiff's similarly situated co-workers, Mark Lola and Doug Rahle, were able to interview and transition into other positions.

**ANSWER:** Abbott admits that Mark Loula and Doug Raihle have interviewed and transitioned into other positions within Abbott. Abbott denies the remaining allegations contained in Paragraph 25.

26. Beginning in the second quarter 2007, Defendant asked Plaintiff to participate in a corporate "older workers" focus group. A primary purpose of the program was to encourage employees nearing their retirement to begin to transition their duties to younger employees, with the intention that upon their retirement such duties would be fully assumed by other individuals. Defendant encouraged the participating employees to transition roles quickly, as it would only accept transition programs with a maximum duration of two (2) years.

**ANSWER:** Abbott admits that in May 2007, Plaintiff participated in a focus group meeting regarding Abbott's desire to retain mature workers. Abbott denies the remaining allegations contained in Paragraph 26.

27. Consistent with Defendant's teachings from the "older workers" focus group, Plaintiff, who had informed Director of Quality Systems Wilson that he planned on retiring at the age of sixty-two (62), began to instruct and transition younger employees on his duties and responsibilities in his position as Operations Manager.

**ANSWER:** Abbott denies the allegations contained in Paragraph 27.

28. In a meeting on October 25, 2007, with Director of Quality Systems Wilson and Document Management Program Manager Pierson, Defendant terminated Plaintiff's employment. Although no reason was given for his termination, Wilson did state that he had made the decision to "speed up" Plaintiffs termination, and that the termination was effective immediately.

**ANSWER:** Abbott admits the allegations contained in the first sentence of Paragraph 28. Abbott denies the allegations contained in the second sentence of Paragraph 28.

29. Following the termination of Plaintiff's employment, on information and belief, Defendant assigned his tasks and responsibilities to the younger employees Plaintiff had been transitioning as part of the "older workers" focus group, including Patricia Pierson and Marcia Pearson.

**ANSWER:** Abbott denies the allegations contained in Paragraph 29.

30. Any reasons proffered by Defendant for terminating Plaintiff's employment are pretext for discriminating against Plaintiff on the basis of his age, fifty-eight (58).

**ANSWER:** Abbott denies the allegations contained in Paragraph 30.

31. The aforementioned acts and omissions of Defendant constitute unlawful and willful discrimination against Plaintiff on the basis of his age, fifty-eight (58), in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.

**ANSWER:** Paragraph 31 states a legal conclusion to which no response is required. To the extent that an answer is required, Abbott denies the allegations contained in Paragraph 31.

32. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**ANSWER:** Abbott denies the allegations contained in Paragraph 32.

## COUNT II - ADEA - RETALIATION

33. Paragraphs one (1) through twenty-seven (27) are incorporated by reference as if fully set out herein.

**ANSWER:** Abbott incorporates its answers to Paragraphs 1 through 27 as though fully set forth herein.

34. Plaintiff met with Laura Hennessy, Human Resources, on October 16, 2007, in order to complain about the harassment and disparate treatment afforded to Plaintiff in comparison to his similarly situated younger co-workers.

**ANSWER:** Abbott admits only that Plaintiff met with Laura Hennessy, a Manager within Employee Relations, on October 16, 2007. Abbott denies the remaining allegations contained in Paragraph 34.

35. In response to Plaintiff's complaints, Human Resources Representative Hennessy said Director Wilson had to do what he thought was good for the company.

**ANSWER:** Abbott denies the allegations contained in Paragraph 35.

36. After seeing no action taken by Defendant to address his concerns, Plaintiff met with Human Resources Representative Hennessy approximately one (1) week later to follow up on the status of his complaints. In response, Hennessy told Plaintiff that she knew nothing more at that time.

**ANSWER:** Abbott admits only that Laura Hennessy met with Plaintiff on October 24, 2007. Abbott denies the remaining allegations contained in Paragraph 36.

-10-

37. On information and belief, Defendant took no substantive action and undertook no substantive investigation in response to Plaintiff's complaints.

**ANSWER:** Abbott denies that Plaintiff complained about harassment and disparate treatment as alleged in Paragraph 34, and therefore denies the allegations contained in Paragraph 37.

38. Plaintiff engaged in statutorily protected conduct under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq., based on his opposition to and reporting of Defendant's harassing and discriminatory conduct directed against him because of his age.

**ANSWER:** Paragraph 38 states a legal conclusion to which no response is required. To the extent that an answer is required, Abbott denies the allegations contained in Paragraph 38.

39. Rather than address his complaints, in a meeting that same week on October 25, 2007, with Director of Quality Systems Wilson and Document Management Program Manager Pierson, Defendant terminated Plaintiffs employment. Although no reason was given for his termination, Wilson did state that he had made the decision to "speed up" Plaintiff's termination and that the termination was effective immediately.

**ANSWER:** Abbott admits only that Plaintiff's employment was terminated on October 25, 2007 in a meeting with Tom Wilson and Patricia Pierson. Abbott denies the remaining allegations contained in Paragraph 39.

40. On information and belief, similarly situated employees who did not engage in statutorily protected activity were not subjected to the adverse actions directed against Plaintiff.

**ANSWER:** Abbott denies the allegations contained in Paragraph 40.

-11-

      41.    Any reasons proffered by Defendant for terminating Plaintiff's employment are pretext for retaliating against Plaintiff because of his complaints of age discrimination.

**ANSWER:** Abbott denies the allegations contained in Paragraph 41.

      42.    The aforementioned acts and omissions of Defendant constitute retaliation against Plaintiff based on his opposition to the creation of a discriminatory work environment, in violation of the provisions of the ADEA, as amended, 29 U.S.C. § 621 et seq.

**ANSWER:** Paragraph 42 states a legal conclusion to which no response is required. To the extent that an answer is required, Abbott denies the allegations contained in Paragraph 42.

      43.    As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**ANSWER:** Abbott denies the allegations contained in Paragraph 43.

### COUNT III - TITLE VII - GENDER DISCRIMINATION

      44.    Paragraphs one (1) through twelve (12) are incorporated by reference as if fully set out herein.

**ANSWER:** Abbott incorporates its answers to Paragraphs 1 through 12 as though fully set forth herein.

      45.    Beginning in 2006 and continuing to the termination of his employment, Defendant has provided female employees more favorable career opportunities and positions. Examples of such conduct are detailed below.

**ANSWER:** Abbott denies the allegations contained in Paragraph 45.

      46.    In approximately the third quarter 2006, Plaintiff applied for an open position of Document Management Program Manager within the QDMS 2.0 project. Based on his substantial experience, expertise, and thirty (30) years in

>   systems implementation, Plaintiff was highly qualified for the position.

**ANSWER:** Abbott lacks knowledge or information sufficient to form a belief as to the truth of the allegation relating to if and when Plaintiff applied for an open position of Document Management Program Manager within the QDMS 2.0 project, and therefore denies the allegations contained in the first sentence of Paragraph 46. Abbott further denies the allegations contained in the second sentence of Paragraph 46.

>   47. Rather than promote Plaintiff to the position, Defendant promoted Cindy Peterson, a female employee, to the role. In contrast to Plaintiff, Peterson lacked the necessary skills and experience in the industry, causing her to struggle with the project and eventually leading to a leave of absence of her employment.

**ANSWER:** Abbott admits that Cindy Peterson, a female employee, was promoted into the position of Document Management Program Manager. Abbott denies the remaining allegations contained in Paragraph 47.

>   48. Following Cindy Peterson's departure in August 2007, Plaintiff again applied for the open position of Document Management Program Manager. Once again, rather than promote Plaintiff, an individual with substantial expertise and experience on the project, Defendant hired Patricia Pierson, a substantially less qualified female employee from outside the organization. In contrast to Plaintiff, who has thirty (30) years experience in technical positions, Pierson only possessed several years of experience in the field, based on her young age of approximately thirty (30) years old.

**ANSWER:** Abbott admits that following Cindy Peterson's departure, Plaintiff applied for the position of Document Management Program Manager. Abbott further admits that Patricia Pierson, a female employee, was hired for this position. Abbott denies the remaining allegations contained in Paragraph 48.

  49. In a meeting on October 25, 2007, with Director of Quality Systems Wilson and Document Management Program Manager Pierson, Defendant terminated Plaintiff's employment. Although no reason was given for his termination, Wilson did state that he had made the decision to "speed up" Plaintiffs termination and that the termination was effective immediately.

**ANSWER:** Abbott admits the allegations contained in the first sentence of Paragraph 49. Abbott denies the allegations contained in the second sentence of Paragraph 49.

  50. Following the termination of Plaintiffs employment, on information and belief, Defendant assigned his tasks and responsibilities to female employees, including Patricia Pierson and Marcia Pearson.

**ANSWER:** Abbott admits that Patricia Pierson, as Plaintiff's direct supervisor, assumed responsibility for Plaintiff's tasks immediately following termination of his employment. Abbott denies the remaining allegations contained in Paragraph 50.

  51. Any reasons proffered by Defendant for terminating Plaintiff's employment are pretext for discriminating against Plaintiff on the basis of his gender, male.

**ANSWER:** Abbott denies the allegations contained in Paragraph 51.

  52. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his gender, male, in violation of provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**ANSWER:** Paragraph 52 states a legal conclusion to which no response is required. To the extent that an answer is required, Abbott denies the allegations contained in Paragraph 52.

  53. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**ANSWER:**   Abbott denies the allegations contained in Paragraph 53.

## COUNT IV - TITLE VII - RETALIATION

54. Paragraphs one (1) through twelve (12) and forty-five (45) through forty-eight (48) are incorporated by reference as if fully set out herein.

**ANSWER:**   Abbott incorporates its answers to Paragraphs 1 through 12 and 45 through 48 as though fully set forth herein.

55. Plaintiff met with Laura Hennessy, Human Resources, on October 16, 2007, in order to complain about the disparate treatment afforded to Plaintiff in comparison to female employees and individuals.

**ANSWER:**   Abbott admits only that Plaintiff met with Laura Hennessy, a Manager within Employee Relations, on October 16, 2007. Abbott denies the remaining allegations contained in Paragraph 55.

56. In response to Plaintiff's complaints, Human Resources Representative Hennessy said Director Wilson had to do what he thought was good for the company.

**ANSWER:**   Abbott denies the allegations contained in Paragraph 56.

57. After seeing no action taken by Defendant to address his concerns, Plaintiff met with Human Resources Representative Hennessy approximately one (1) week later to follow up on the status of his complaints. In response, Hennessy told Plaintiff that she knew nothing more at that time.

**ANSWER:**   Abbott admits only that Laura Hennessy met with Plaintiff on October 24, 2007. Abbott denies the remaining allegations contained in Paragraph 57.

58. On information and belief, Defendant took no substantive action and undertook no substantive investigation in response to Plaintiffs complaints.

**ANSWER:**   Abbott denies the allegations contained in Paragraph 58.

59. Plaintiff engaged in statutorily protected conduct under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., based on his opposition to and reporting of the disparate treatment afforded to female employees.

**ANSWER:** Paragraph 59 states a legal conclusion to which no response is required. To the extent that an answer is required, Abbott denies the allegations contained in Paragraph 59.

60. Rather than address his complaints, in a meeting that same week on October 25, 2007, with Director of Quality Systems Wilson and Document Management Program Manager Pierson, Defendant terminated Plaintiff's employment. Although no reason was given for his termination, Wilson did state that he had made the decision to "speed up" Plaintiff's termination and that the termination was effective immediately.

**ANSWER:** Abbott admits that Plaintiff's employment was terminated on October 25, 2007 in a meeting with Tom Wilson and Patricia Pierson. Abbott denies the remaining allegations contained in Paragraph 60.

61. On information and belief, similarly situated employees who did not engage in statutorily protected activity were not subjected to the adverse actions directed against Plaintiff.

**ANSWER:** Abbott denies the allegations contained in Paragraph 61.

62. Any reasons proffered by Defendant for terminating Plaintiffs employment are pretext for retaliating against Plaintiff because of his complaints of gender discrimination.

**ANSWER:** Abbott denies the allegations contained in Paragraph 62.

63. The aforementioned acts and omissions of Defendant constitute retaliation against Plaintiff based on his opposition to the creation of a discriminatory work environment, in violation of the provisions of Title VII

>    of the Civil Rights Act of 1964, as amended, 42 U.S.C.
>    § 2000e et seq.

**ANSWER:** Paragraph 63 states a legal conclusion to which no response is required. To the extent that an answer is required, Abbott denies the allegations contained in Paragraph 63.

> 64. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**ANSWER:** Abbott denies the allegations contained in Paragraph 64.

## AFFIRMATIVE DEFENSES

Defendant, Abbott Laboratories ("Abbott"), by and through its attorneys, hereby asserts the following Affirmative Defenses to Plaintiff's Compliant:

### AFFIRMATIVE DEFENSE 1

Abbott undertook good faith efforts to comply with anti-discrimination laws – including Title VII and the ADEA – by, among other things, making good faith efforts to enforce an anti-discrimination policy, thus barring Plaintiff's claims for punitive damages.

### AFFIRMATIVE DEFENSE 2

Abbott exercised reasonable care to prevent and to correct promptly any alleged discrimination or harassment in the workplace, and Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by Abbott to avoid the alleged or other harm.

### AFFIRMATIVE DEFENSE 3

Plaintiff unreasonably failed to take advantage of the appeals process provided by Abbott to appeal Abbott's decision to terminate Plaintiff's employment.

### AFFIRMATIVE DEFENSE 4

Plaintiff's retaliation claims are barred to the extent that Plaintiff did not engage in activity protected by Title VII or the ADEA, because he did not make a good faith attempt to complaint to Abbott that his rights under Title VII or the ADEA were being violated and because he did not hold a reasonable belief that Abbott engaged in any unlawful conduct.

### AFFIRMATIVE DEFENSE 5

Plaintiff's claims are barred to the extent that they are outside the scope of his administrative charge.

**<u>AFFIRMATIVE DEFENSE 6</u>**

Plaintiff's claim for damages is barred to the extent he has failed to mitigate his damages.

WHEREFORE, Defendant Abbott Laboratories respectfully requests that the Court enter a judgment in its favor and against Plaintiff as follows:

(a) dismissing Plaintiff's Complaint in its entirety with prejudice; and

(b) granting Defendant Abbot Laboratories such other and further relief as the Court deems just and proper.

Dated: January 29, 2008            Respectfully submitted,

ABBOTT LABORATORIES

By /s/ Priya M. Bhatia _____
One of Its Attorneys

David E. Morrison
Priya M. Bhatia
GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000